UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK
2/4/2016 11:15 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

-----------------------------------------------------X
JEFFREY LOCHARD,

      Petitioner,

  -v-                                            Case No. 2:13-cv-0151 (SFJ)

UNITED STATES OF AMERICA,

      Respondent.
-----------------------------------------------------X
FEUERSTEIN, J.

## ORDER DENYING § 2255 MOTION

I.    Introduction

Petitioner Jeffrey Lochard ("Petitioner") moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. ("§ 2255 Motion"; *see* ECF No. 1.) The United States of Americas (hereafter, the "Government") objects. (*See* ECF No. 10.) For the reasons that follow, the Petitioner's § 2255 Motion is DENIED.

II.    Background

    *A. Petitioner's Crime, Plea Agreement, and Plea Hearing*

In October 2010, the United States Postal Inspection Service initiated an investigation into the non-receipt by intended recipients of mailed credit cards. Its investigation led to the November 24, 2010 arrest of Petitioner, following his unauthorized purchases with some of those cards which had been captured on surveillance videos and still photographs. (*See United States v. Jeffrey Lochard*, No. 2:10-cr-996 (E.D.N.Y. 2010) (hereafter, "Criminal Case").) Subsequently, on October 12, 2011, Petitioner entered a plea of guilty to one count of access device fraud in violation of 18 U.S.C. § 1029(a)(5). (*See* Criminal Case, ECF No. 23.)

Prior ro his plea, with the assistance of retained counsel (*i.e.*, Spiro Ferris, Esq.; hereafter,

"Defense Counsel"), Petitioner entered into a plea agreement ("Plea Agreement"[1]) with the Government which provided, *inter alia*: restitution would be set in an amount to be determined by the Court at sentencing (Plea Agreement at ¶1(e)); the Sentencing Guidelines ("Guidelines") were advisory (*id.* at ¶2); the loss amount was greater than two hundred thousand dollars ($200,000.00) (*see id.*); bases on the Government's Guidelines calculations of offense level and the Petitioner's criminal history, the estimated range of imprisonment the Petitioner could face was between fifty-seven (57) and seventy-one (71) months (*see id.*); and, the Government's estimate was not binding. Petitioner did "not stipulate to the Guidelines calculation and reserve[d] the right to challenge this estimate and to make any non-guidelines argument at the time of sentencing." (*Id.*) Importantly, one of the Plea Agreement provisions was an appeal waiver provision, which provided in relevant part:

> 4. The defendant will not file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 78 months or below. *This waiver is binding without regard to the sentencing analysis used by the Court.* . . . The defendant waives any right to additional disclosure from the government in connect with the guilty plea. . . .

(*Id.* at ¶4 (emphasis added).)

At the end of the Plea Agreement and before his signature, the following statement was included: "I have read the entire agreement and discussed it with my attorney. *I understand all of its terms and am entering into it knowingly and voluntarily*." (*Id.* at 8 (emphasis added).) The Petitioner signed his name below this statement. His signature was followed by an "Approved by:" signature block for Defense Counsel, which Defense Counsel executed. (*See id.*)

At the commencement of the plea hearing, in response to Magistrate Judge Wall's inquiry whether Defense Counsel had reviewed the Plea Agreement with Petitioner and Petitioner

---

[1] In its Objection, the Government included an appendix, which contained: the Plea Agreement (pages A001-008); the transcript of the Petitioner's October 12, 2011 guilty plea (pages A009-026)(hereafter, "Plea Transcript"); and, the transcript of the Petitioner's April 11, 2012 sentencing (pages A027-047)(hereafter, "Sentencing Transcript"). The Court will use each document's internal pagination when citing to it.

understood it, Defense Counsel responded affirmatively.  (*See* Plea Transcript at 2:15-19.)
Likewise, Defense Counsel affirmed to Magistrate Judge Hall that both Petitioner's and his
signatures were on the last page of the Plea Agreement.  (*See id.* at 2:20-22.)  The Magistrate
Judge then proceeded to have a colloquy with Petitioner, inquiring of Petitioner whether: he
understood what was occurring (*see id.* at 4:4-6, 5:7-8); his mind was clear (*see id.* at 5:1-6); he
had discussed his case with Defense Counsel (*see id.* at 6:1-10); and he was satisfied with
Defense Counsel's representation of him (*see id.* at 6:2-4).  Petitioner responded "yes" to all of
those inquiries.

      The Magistrate Judge continued his exchange with the Petitioner explaining the rights
Petitioner would be forgoing by pleading guilty, concluding with the following explanatory
inquiry:

> Q.  If you plead guilty – and I recommend Judge Feuerstein accept
> your plea – you will be giving up your constitutional right to a trial
> and the other rights I have just discussed.  *There will be no* further
> trial of any kind, and no *right to an appeal*.  Judge Feuerstein will
> simply enter a judgment of guilty on the basis of your guilty plea.
> Do you understand?
> A.  Yes.
> Q.  *Are you willing to give up your right to a trial and the other
> rights I have just discussed*?
> A.  *Yes, Sir*.
> Q.  Okay.  I have marked the Plea Agreement in this case as Court
> Exhibit 1.  Have you reviewed it with [Defense Counsel], and do
> you understand it?
> A.  Yes, Sir.
> Q.  And does that Plea Agreement accurately reflect the agreement
> that you have reached with the Government?
> A.  Yes.

(*Id.* at 9:9-15 (emphasis added).)  Petitioner further acknowledged his understanding that the
range of imprisonment he would likely be facing was fifty-seven (57) to seventy-one (71) months
(*see id.* at 11:14-19.)  When asked by Magistrate Judge Wall whether he had any questions for
the Court regarding the charge, his rights or anything else relating to the matter, the Petitioner
responded, "I understand everything." (*Id.* at 11:25-12:3.)  Thereafter, the Magistrate Judge
found: Petitioner was acting voluntarily; Petitioner fully understood his rights and the

3

consequences of his plea; and, there was a factual basis for the plea. (*See id.* at 14:3-7.) Therefore, he would recommend an acceptance of Petitioner's plea to the one-count indictment charging Access Device Fraud. (*See id.* at 14:7-9.) Adopting the Magistrate Judge's recommendation that Petitioner's "plea was knowingly and voluntarily entered . . . with a full understanding of his rights and the consequences of the plea of which there [was] a factual basis," this Court accepted Petitioner's plea of guilty. (Criminal Case, ECF No. 29.)

### B. The Pre-Sentencing Report and Petitioner's Sentencing

The Probation Department's original Pre-Sentencing Report ("PSR") indicated Petitioner's unauthorized use of credit card resulted in a loss amount to JP Morgan Chase of two hundred fifteen thousand, one hundred fifty-one dollars and fifty cents ($215,151.50), with 46 credit cards having been involved. As a result, the Department recommended a Guidelines sentencing range of forty-one (41) to fifty-one (51) months. The Petitioner objected to the loss amount, arguing he was not involved in all the related transactions, and requested a *Fatico* hearing. He sought a non-Guidelines sentence of thirty (30) months based on 18 U.S.C. § 3553(a) factors.

At the initial February 12, 2012 sentencing hearing, the Court gave Petitioner mandatory notice of its intent to upwardly depart from the Guidelines range. (*See* Criminal Case, ECF No. 33.) However, the Government informed the Court that the loss amount was significantly less than originally indicated in the PSR. Therefore, Petitioner's sentencing was adjourned.

Thereafter, the PSR was amended to reflect a recalculated Guidelines sentencing range using the lower loss amount of one hundred eight thousand, two hundred sixty-eight dollars and no cents ($108,268.00). It did not indicate any change in the number of credit cards Petitioner fraudulently used. The resulting amended Guideline sentencing range was thirty (30) to thirty-seven (37) months. Through Defense Counsel, Petitioner asked the Court to consider imposition of a sentence within this amended range, but still sought a *Fatico* hearing, claiming the loss amount was less than the amended one hundred eight thousand, two hundred sixty-eight dollars and no cents ($108,268.00). (*See* Criminal Case, ECF No. 36 (Petitioner's Letter Objection dated Apr. 9, 2012).)

4

However, at the commencement of the April 11, 2012 continued sentencing hearing, Defense Counsel informed the Court that he was no longer seeking a *Fatico* hearing. (*See* Sentencing Transcript at 3:2-4.) Moreover, when asked, "Do you have any objections to the presentence report now that the restitution amount has been amended?," Defense Counsel stated he did not. (*See id.* at 6:9-11.) Defense Counsel also reiterated his request, made in Petitioner's Letter Objection, to impose a sentence within the amended Guidelines sentencing range of thirty (30) to thirty-seven (37) months. (*See id.* at 6: 21-24; *see also id.* at 8:17-19.)

During the sentencing hearing, there was also a colloquy with the Court regarding the number of individuals affected by Petitioner's fraudulent use of credit cards. Relying upon the original PSR, the Court indicated there were forty-six (46) "victims". However, Petitioner contested that number. The Government clarified that there were two institutional victims; *i.e.*, credit card companies JP Morgan Chase, which had six (6) of its credit cards fraudulently used by Petitioner, and Bank of America, which had thirteen (13) of its credit cards fraudulently used by Petitioner. (*See id.* at 14:14-16, 15:16-25.) Thus, the number of "people [who] were at the very least inconvenienced by this activity," as the Court described it, was nineteen (19). (*Id.* at 12:17-18.) Despite the Petitioner's attempt to argue a lower number of credit cards fraudulently used (*see id.* at 15:8-10, 16:10-17), he did not challenge the one hundred eight thousand, two hundred sixty-eight dollars and no cents ($108,268.00) loss amount (*see id.* at 17: 14-17). Ultimately, the Court determined that a thirty-six (36) month sentence would be appropriate considering the number of credit cards involved, the § 3553 factors, and that the sentence was within the recommended Guidelines range. (*See id.* at 18:14-20.)

### C. Petitioner's Efforts to Secure a Payment Schedule

> [Petitioner] was serving his sentence . . . when he received a letter from the government dated May 9, 2012, informing him that payment in full of restitution was due immediately and that interest would accrue on any unpaid balance. [Petitioner] wrote to the district court on October 11, 2011 seeking a payment schedule; the government opposed this request by letter dated October 24, 2012. On November 19, 2012, [Petitioner] filed a *pro se* motion for modification of the judgment under 18 U.S.C. § 3582(c)(1)(B) [(hereafter, the "Modification Motion"; Criminal Case ECF No.

5

> 46)]. *He specified that the sole modification sought was a payment schedule.*

*United States v. Lochard*, No. 12-5115, Summary Order at 2-3 (2d Cir. Feb. 19, 2014) ("Summary Order"). On November 28, 2012, this Court denied Petitioner's Modification Motion in a memorandum endorsement. *See* Summary Order at 7; *see also* Criminal Case ECF No. 47. On December 17, 2012, Petitioner appealed. (*See* Criminal Case ECF No. 48.) At the Second Circuit, the Government argued, *inter alia*, the appeal was time-barred, and this Court lacked jurisdiction to consider the Modification Motion. *See* Summary Order at 3-4.

On February 19, 2014, the Second Circuit ruled that the Modification Motion was not time barred, *see id.* at 3-4, and that this Court had jurisdiction to modify the terms of payment of restitution since it was not a modification in sentence. *See id.* at 4 (citing *United States v. Kyles*, 601 F.3d 78, 83-84 (2d Cir. 2010); *see also id.* at 4-5. Thus, it vacated this Court's order to "accord [Petitioner] the opportunity to be heard", *id.* at 7, regarding "(1) whether [Petitioner] has demonstrated or can demonstrate a change in economic circumstances as contemplated by [18 U.S.C.] § 3664(k), and (2) whether the district court can nonetheless impose a restitution schedule absent any such showing." *Id.* at 8.

Thereafter, on March 7, 2014, this Court issued a scheduling order providing Petitioner with the opportunity to file a supplemental Modification Motion, and further stating that if no supplemental motion was filed by the deadline, the Modification Motion "will be decided 'anew' solely upon the original papers filed" by Petitioner. (March 7, 2014 Order (Criminal Case ECF No. 54).) The Government was assigned a response date and Petitioner a reply date. (*See id.*) No supplemental Modification Motion was ever filed. The Modification Motion remains pending.

### D. Petitioner's § 2255 Motion

On January 4, 2013, while his appeal of the Modification Motion was pending, Petitioner filed the instant § 2255 Motion. He raised two (2) grounds for relief: (1) the alleged "unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant" (hereafter, the "Failure-to-Disclose Argument"); and (2) the alleged "[d]enial of

effective assistance of counsel" (hereafter, the "Ineffective Assistance Argument") (§ 2255 Motion at 5, ¶12(A) &(B)).

The facts Petitioner alleged in support of his Failure-to-Disclose Argument center on the "day of sentencing". (§ 2255 Motion at 5, ¶12(A).) He stated: (1) there was a "substitute AUSA [(*i.e.*, Assistant U.S. Attorney)]"; (2) the substitute AUSA (a) did not know the "actual loss amount" involved in the case, and (b) telephoned the "original" AUSA to find out the number of victims of Petitioner's credit card fraud; (3) he learned for the first time that the victim count was between nine (9) and thirteen (13); and (4) he did not know the basis for that victim count. (*See id.*)

The facts Petitioner alleged in support of his Ineffective Assistance Argument center upon defense counsel's conduct "[t]hroughout the case". (§ 2255 Motion at 5, ¶12(B).) He asserted that defense counsel failed: (1) to conduct any investigation; (2) to seek expanded discovery regarding the disclosure of nine (9) to thirteen (13) victims; and (3) failed to "assist in, move for, or otherwise invoke any Procedure for issuance and enforcement of order of restitution . . ." (*Id.*)

In response to the Court's February 4, 2013 Order to Show Cause why Petitioner's § 2255 Motion should not be granted (*see* ECF No. 3), on May 13, 2013, the Government filed a Response in Opposition. (*See* ECF No. 10.) The Government contends the § 2255 Motion is procedurally barred and that Petitioner's arguments regarding ineffective assistance of counsel are without merit since, based on the nature of Petitioner's offense, restitution is mandatory; Defense Counsel advocated for a reduction in the loss amount and restitution amount; and the Court is the arbiter of when and how restitution is paid.

On June 17, 2013, the Petitioner filed a reply refuting the Governments contentions (hereafter, "Reply"). (*See* ECF No. 11.) In further support of his Ineffective Assistance Argument, the Petitioner appears to advance two (2) arguments. First, he argues that the Restitution Amount was not properly determined and that Defense Counsel did not do enough to ensure a proper determination, despite Petitioner's "pressing" him to do so. (*See* Reply at 6-7.) Second, Petitioner focuses on the Government's post-sentencing collection efforts regarding the Restitution Amount. In particular, he faults Defense Counsel for not responding to the Government's May 9, 2012 letter regarding those collection efforts. Apparently, Petitioner

believes Defense Counsel should have worked out a payment schedule of the Restitution Amount with the Government and Defense Counsel's failure to do so is tantamount to ineffective assistance. (*See id.* at 8-9.) Indeed, Petitioner relies heavily on his post-sentencing, *pro se* efforts in seeking a payment schedule as support for his Ineffective Assistance Argument.

III.   Discussion

As an initial matter, the Court notes where a petitioner proceeds *pro se*, his submissions must be read "broadly so as to determine whether they raise any colorable legal claims." *Parisi v. United States*, 529 F.3d 134, 139 (2d Cir. 2008) (further citation omitted); *see also Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)(*pro se* papers should be read to raise the strongest arguments that they suggest)(further citations omitted). The Court does so with Petitioner's § 2255 Motion. Further, the Court has determined that it is prudent to address Petitioner's Ineffective Assistance Argument first.

   A.   Standard

> "Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. U[nited] S[tates]*, 59 F.3d 296, 01 (2d Cir. 1995) (internal citation omitted). "As a general rule, relief is available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994)(internal citations and quotation marks omitted).

*Sanchez v. United States*, No. 3:12-cv-1562 (JCH), 2013 WL 3305796, *2 (D. Conn. June 27, 2013) (brackets in block quote citation added).

Moreover, "[a]n appeal waiver is presumptively valid and enforceable." *United Sates v. Peele*, 500 Fed. App'x 33, 35 (2d Cir. 2012) (citing *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010)). The Second Circuit has "repeatedly upheld the validity of [appeal] waivers if they

are knowingly, voluntarily, and competently provided by the defendant." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (citing *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000))(internal quotation marks omitted). "While violations of fundamental rights warrant voiding appeal waivers, other meaningful errors do not." *Peele*, 500 Fed. App'x at 35 (citing *Riggis*, 649 F.3d at 147). Thus, the Second Circuit will " 'enforce[] waivers where a sentence was arguably imposed contrary to a statutory requirement.' " *Id.* (quoting *Riggis*, 649 F.3d at 147.) That is so because " '[i]n no circumstances . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal [or collaterally attack] the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.' " *Rodriguez v. United States*, No. 3:11-cv-131 (EBB), 2012 WL 10551, slip op at 5 (D. Conn. Jan. 3, 2012) (quoting *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (brackets in *Rodriguez*)).

    B. *Ineffective Assistance Argument*

The Court construes Petitioner's Ineffective Assistance Argument to assert a claim of ineffective assistance of counsel in entering the Plea Agreement thereby rendering that agreement invalid. *See Green*, 260 F.3d at 83. Petitioner's claim appears to be based on Defense Counsel allegedly not investigating of the loss amount or moving for expanded discovery regarding that issue.

> "Under prevailing law '[t]he standard [for determining the validity of guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses open to the defendant." [*Ventura v. Meacham*, 957 F.2d 1048, 1058 (2d Cir. 1992)] (*citing North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid;" however, "to succeed with such a challenge, a defendant must meet the two-part test" from *Strickland[ v. Washington*, 466 U.S. 668 (1984)]. *Id.*

*Sanchez v. United States*, No. 3:12-cv-1562 (JCH), 2013 WL 3305796, *4, slip op. (D. Conn. June 27, 2013). Under *Strickland*, a petitioner must show that his "counsel's representation fell

below an objective standard of reasonableness [(*i.e.*, the objection part of the test)] . . . [and] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*i.e.*, the prejudice part of the test). *Strickland*, 466 U.S. 668, 687-88, 692. Moreover, a court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

Here, the Court does not need to address the first part of the *Strickland* test since the Petitioner cannot satisfy his burden under the second, prejudice part of the test. He claims that due to Defense Counsel's lack of investigation, the loss amount was extrapolated. The Court will construe this allegation to mean Petitioner believes Defense Counsel misled him regarding the possible sentence which might result from his plea since the loss amount was one of the components of the Guidelines sentencing calculation. However, that argument fails.

> "When a petitioner claims his counsel 'mislead him as to the possible sentence which might result from [his] plea,' he cannot overcome *Strickland*'s prejudice prong if he was made aware of 'the actual sentencing possibilities' and entered into the plea agreement anyway." *Shah v. United States*, 2013 WL 1641167, at *4 (S.D.N.Y. Apr. 16, 2013); *see also Ventura*, 957 F.2d at 1058 (stating that, if a defendant has "been made so aware prior to entering the plea agreement" as to the terms of the plea, he cannot "show that 'but for counsel's unprofessional errors, the result of the proceedings would have been different'"); *Rodriguez v. United States*, 2012 WL 10551, *4 (D. Conn. Jan. 3, 2012)(same).

*Sanchez*, 2013 WL 3305796, at *4.

Despite his apparent claim to the contrary, Petitioner was made aware of the actual sentencing possibilities he faced. Those possibilities were contained in the Plea Agreement and specifically discussed with the Petitioner in detail at the plea hearing. (*See* Plea Transcript at 5:9-12:7.) The explicit statement in the Plea Agreement that the Petitioner did "not stipulate to the Guidelines calculation and reserve[d] the right to challenge this estimate and to make any non-Guidelines argument at the time of sentencing" (Plea Agreement at 3, ¶2), further demonstrates the Petitioner's awareness of the sentencing possibilities he faced. Nonetheless, Petitioner entered the Plea Agreement. This was done knowingly and voluntarily as evidenced by both Petitioner's signature to the Plea Agreement, which stated it was "entered into knowingly and

voluntarily" (Plea Agreement at 8), and the detailed colloquy between the Magistrate Judge and the Petitioner at the plea hearing, at the conclusion of which the Magistrate Judge found Petitioner entered into the Pleas Agreement knowingly and voluntarily. Having been made aware the actual sentencing possibilities he faced, but entering into the Plea Agreement nonetheless, Petitioner cannot overcome *Strickland*'s prejudice prong. Therefore, Petitioner's Ineffective Assistance Argument fails. In turn, the Court finds the Plea Agreement is valid.

To the extent Petitioner argues that Defense Counsel was ineffective at sentencing and post-sentencing, those claims are foreclosed by the appeal waiver provision of the Plea Agreement. As noted, Petitioner affirmatively acknowledged that he understood and was advised of the waiver provision both when he signed the Plea Agreement and when he responded affirmatively to the Magistrate Judge's canvass regarding that provision. It is, therefore, enforceable and is a basis for this Court to decline to consider the Ineffective Council Argument regarding events which occurred after Petitioner's plea. *See Salcido-Conteras*, 990 F.2d at 53; *see also Rodriguez*, 2012 WL 10551, at *4-5.

### C. Failure-to-Disclose Argument

Petitioner's Failure-to-Disclose Argument fails for similar reasons. Despite asserting his *conviction* was obtained by the unconstitutional failure of the prosecution to disclose to Petitioner evidence which he alleges would have been favorable to him, it is apparent from Petitioner's supporting facts that he is challenging his sentence. (*See supra* at 7.) The waiver provision of the Plea Agreement provided in relevant part:

> The [Petitioner] will not file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment or 78 months or below. *This waiver is binding without regard to the sentencing analysis used by the Court*. . . .

(Plea Agreement at 3-4, ¶4 (emphasis added).) Thus, Petitioner's Failure-to-Disclose Argument is foreclosed by the valid and enforceable waiver of his right to collaterally attack his sentence. Additionally, since Petitioner's thirty-six (36)-month sentenced conformed to the valid waiver provision of the Plea Agreement, he is barred from collaterally challenging the merits of his

sentence as substantively unreasonable.

### D. Petitioner's Challenge to Restitution Order

Finally, to the extent Petitioner's § 2255 Motion can be construed as seeking collateral relief from noncustodial punishment, *i.e.*, a challenge to the imposition of restitution and/or a request for a payment schedule of the restitution amount, such a challenge is not cognizable on a § 2255 motion to vacate. *See Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003); *see also Carnesi v. United States*, No. 06-cv-5917 (ADS), 2009 WL 3837948, at *1, slip op. (E.D.N.Y. Nov. 17, 2009). "In other words, because an attack on a restitution order would not amount to a request for a release from custody, the court lacks subject matter jurisdiction to hear such a claim under § 2255." *Carnesi*, 2009 WL 3837948, at *1. Furthermore, to the extent Petitioner's § 2255 Motion can be read to claim ineffective assistance of counsel based on Defense Counsel's failure to object to the restitution order, the Second Circuit has determined that § 2255 does not convey subject matter jurisdiction upon a district court to make that determination. *See Kaminski*, 339 F.3d at 85 n.1; *see also Carnesi*, 2009 WL 3837948, at *2 (citing *Kaminski*). Therefore, the Court need not address such a claim.[2]

### E. Evidentiary Hearing Not Necessary

Where a § 2255 petition "and the files and records of the case conclusively show that a prisoner is entitled to no relief," a court is not required to hold an evidentiary hearing. 28 U.S.C. § 2255(b); *see also United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990); *Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir. 1981), *cert. denied*, 456 U.S. 907 (1982); *Reyes v. United States*, Nos. 89-cv-0308, 87-cr-0458-01, 1989 WL 83376, *3, slip op. (E.D.N.Y. July 20, 1989). This Court was the sentencing court in the Criminal Case. It is with this background and its familiarity with the detailed factual record of the Criminal Case that the Court has considered Petitioner's § 2255 Petition and determined that his claims are without merit. *See Aiello*, 900 F.2d at 534. Indeed,

---

[2] The Court notes that to the extent Petitioner seeks a modification of the restitution order in the form of a payment schedule pursuant to 18 U.S.C. § 3664, he was afforded that opportunity, *see supra* at 5-6, but has not availed himself of it.

12

Petitioner's two claims are squarely refuted by both the Plea Agreement, which Petitioner knowingly and voluntarily entered, and his Rule 11 allocutions, which are afforded a strong presumption of verity. *See Fogg*, 653 F.2d at 752 (a defendant's Rule 11 statements "constitute a formidable barrier in any subsequent collateral proceeding," and "[s]olemn declarations in open court carry a strong presumption of verity")(further citation omitted); *see also Reyes*, 1989 WL 83376, *4-5 ("the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are conclusively established by that proceeding unless and until he makes some reasonable allegation why this should not be so")(internal quotation marks and further citations omitted). Petitioner has failed to make a reasonable allegation why the accuracy and truth of his plea allocutions have not been conclusively established. Thus, the Court finds Petitioner's allegations in his § 2255 Motion do not raise sufficiently substantial issues warranting a hearing. *See Fogg*, 653 F.2d at 753.

IV. <u>Conclusion</u>

Accordingly, the Petitioner's § 2255 Motion is DENIED. Since the Petitioner has failed to make a substantial showing of the denial of a constitutional right, any appeal from this Order would not be taken in good faith; therefore, a certificate of appealability shall not issue. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: February 4, 2016     ___/s/_____
        Central Islip, New York.            Sandra J. Feuerstein
                                                         United States District Judge